[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO DISMISS, #122
 Facts and Procedural Background
In a complaint, dated August 27, 1996, plaintiffs, Gerald Maranda, a former security administrator for Foxwoods Resort and Casino (casino), and John Drumm and Richard Perron, both members CT Page 438 of the Connecticut State Police, filed suit against G. Michael Brown, Robert Carroll, George Henningsen and Robert Winter, officers of the Mashantucket Pequot Gaming Enterprise (gaming enterprise).[1] The Mashantucket Pequot Tribe (tribe) owns the gaming enterprise and casino. The plaintiffs also named Richard Hayward, member and then chair of the tribal council, as a defendant.
On December 6, 1996, the defendants filed a motion to dismiss the original complaint on the ground that the plaintiffs had failed to exhaust their tribal remedies; the court granted the defendants' motion on June 27, 1997 (Arena, J.)
The plaintiffs appealed the judgment of the trial court.
In the interim, plaintiffs Drumm and Perron began parallel proceedings in the Mashantucket Pequot Tribal Court (tribal court)
Upon appeal, the Supreme Court for the State of Connecticut reversed the lower court; Drumm v. Brown, 245 Conn. 657, 659,716 A.2d 50 (1998); concluding that Connecticut courts have authority to hear and decide civil matters, even those involving tribal members; Id., 675 n. 6. See also Charles v. Charles,243 Conn. 255, 701 A.2d 650 (1997), cert. denied, ___ U.S. ___ (1998). The court further held that there exists a strong presumption in favor of a plaintiff's choice of forum. Id., 688.
In light of the parallel tribal court proceeding, the Supreme Court directed that the trial court stay the proceedings with respect to plaintiffs Drumm and Perron; however, since Maranda had not initiated tribal court proceedings, the Drumm Court remanded his claims back to the trial court for further proceedings consistent with its decision. Id., 689.
Thereafter, the defendants requested that Maranda revise his complaint, which he has done. (Plaintiff's Second Revised Complaint, dated November 14, 1998.) The defendants moved to dismiss counts three (intentional infliction of emotional distress) and four (negligent infliction of emotional distress) of the plaintiff's second revised complaint, by motion, dated December 10, 1998. The defendants submitted the requisite memorandum of law in support of their motion to dismiss, after which, the plaintiff filed a memorandum of law in opposition. The court (Robaina, J.) denied the defendants' motion to dismiss the CT Page 439 third count. The court reserved judgment with respect to the fourth count (negligent infliction of emotional distress) and requested supplemental memoranda of law addressing the question: "Does federal common law confer a grant of absolute immunity upon tribal employees? If federal common law does not provide such an absolute privilege, how does federal law condition or qualify the doctrine of sovereign immunity with respect to tribal employees?"
 Standard of Review
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). "The doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore (provided the court finds sovereign immunity applicable] a basis for granting a motion to dismiss." (Internal quotation marks omitted.) FederalDeposit Ins. Corp. v. Peabody, N.E., Inc., 239 Conn. 93, 99,680 A.2d 1321 (1996).
 Discussion
The defendants contend that the doctrine of tribal immunity divests the trial court of subject matter jurisdiction and, further, that federal law pre-empts the authority of the state trial court to hear this matter, since an exercise of jurisdiction by the trial court would interfere with the inherent sovereignty of the tribe.
The plaintiff argues that he directed his complaint against the individually-named defendants, not the tribe; and, therefore, sovereign immunity does not attach. Moreover, the plaintiff asserts that his claim does not interfere with tribal self-government nor impair any right granted to the tribe by the federal government.
"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . Jurisdiction of the subject matter is the power (of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Brackets in original; internal quotation marks omitted.) Doe v. Roe,246 Conn. 652, 661, 717 A.2d 706 (1998). CT Page 440
The Connecticut Supreme Court has established that its trial courts have the authority and competence to hear and decide civil causes of action and criminal matters, including bases that involve events that occur on the Mashantucket Pequot reservation and/or involve members of the tribe. State v. Spears,234 Conn. 78, 662 A.2d 80, cert. denied, 116 S.Ct. 565 (1995); Charles v.Charles, supra, 243 Conn. 255; Drumm v. Brown, supra,245 Conn. 657; 25 U.S.C. § 1755.
The court in Drumm stated: that "if the nontribal court clearly lacked jurisdiction, the action could be dismissed on that basis, without considering whether to abstain pursuant to the exhaustion doctrine. Without deciding the issue of the jurisdiction of the state trial court, we note that the parties have not questioned that court's jurisdiction and, in our view, the record does not suggest any clear jurisdictional problems. Cf. Charles v.Charles, 243 Conn. 255, 263-65, 701 A.2d 650 (1997)." Drumm v. Brown, supra, 245 Conn. 676, n. 6.
The defendants, by their motion, now directly challenge The defendants, by their motion, now directly challenge the jurisdiction of the trial court.
Sovereign Immunity
An analysis of the trial court's authority to resolve this dispute involves a two-part inquiry: does federal law pre-empt state jurisdiction or, alternatively, will the state's exercise of its jurisdiction infringe on the inherent sovereignty of the tribe. See Cuprak v. Sun International Hotels Ltd., Superior Court, judicial district of New London at Norwich, Docket No. 112045 (October 9, 1997) (Handy, J.).
The defendants have failed to cite any federal statute, treaty or case that stands for the proposition that tribal employees may invoke the absolute immunity granted tribes under federal common law. See Kiowa Tribe of Oklahoma v. Manufacturing Technologies,Inc., ___ U.S. ___ (1998).
Accordingly, since there exists no federal law affording employees of a tribal enterprise the protection of a tribe's sovereign immunity, which would thereby divest a state court of jurisdiction, the doctrine of tribal immunity cannot provided a basis for dismissing the fourth count of the plaintiff's CT Page 441 complaint.
Tribal Self-Government
In determining whether a nontribal court's exercise of jurisdiction infringes upon the inherent sovereign of the tribe, i.e., the tribe's political integrity, economic security, or health and welfare; Drumm v. Brown, supra, 245 Conn. 674 (citingStrate v. A-1 Contractors, ___ U.S. ___ 117 S.Ct. 1404,137 L.Ed.2d 661 [1997]); trial courts have engaged a "three-part test: (1) whether the parties involved are Indians or non-Indians; (2) whether the cause of action arose within the Indian reservation; and (3) the nature of the interest to be protected." (Citations omitted.) Cuprak v. Sun International Hotels Ltd.,
supra, Superior Court, Docket No. 112045.
The Drumm court fully detailed the factual background of this controversy. Drumm v. Brown, supra, 245 Conn. 661, n. 3. With the exception of one defendant, the defendants are non-Indians; the events that gave rise to the plaintiff's claim occurred both on and off the reservation; and, the tribal interest asserted concerns the tribe's commercial activities. The posture of the plaintiff's compliant, which he has directed solely against the defendants and not the tribe, attenuates any asserted tribal interest as the tribe has not been made a party to the suit. Allowing a state trial court to adjudicate this matter will not undermine the tribe's autonomy. Accordingly, because adjudication of the plaintiff's complaint by a state trial court will not infringe the tribe's inherent sovereignty, tribal sovereignty does not provide a basis for dismissing count four.
 Conclusion
In conclusion, the court finds that it has the requisite jurisdiction to hear and decide the plaintiff's complaint, and, therefore, denies the defendants' motion to dismiss count four (negligent infliction of emotion distress) of the plaintiff's revised complaint.
It is so ordered.
BY THE COURT
Robaina, J.
CT Page 442